## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

RICHARD BOTTOM,                              Civil Action No.


*Plaintiff,*

v.

A. PATTERSON, in his/her official                Complaint and Jury Demand
capacity, M. KRUG, in his/her official
capacity, DETECTIVE STERLACE, in his
official capacity, CITY OF BUFFALO,
BUFFALO POLICE DEPARTMENT,
NIAGARA COUNTY, AND NIAGARA
COUNTY SHERIFF'S OFFICE,

*Defendants.*


## **COMPLAINT**

1.      Without a warrant or consent, officers of the Niagara County Sherriff's Office and Buffalo Police Department trespassed on Richard Bottom's property. The officers unlawfully searched his garage, home, and property, and unlawfully seized Mr. Bottom's truck, firearm, and person. Mr. Bottom was taken to Buffalo against his will where he was mirandized and questioned. Mr. Bottom did not receive his property back for an extensive and unreasonable amount of time.

2.      These officers deprived Mr. Bottom of his constitutional rights. Mr. Bottom now files this civil rights suit to vindicate his constitutional rights and to receive compensation for his injuries.

## Jurisdiction and Venue

3.    This is a civil rights suit brought under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983.

4.    Mr. Bottom seeks declaratory and retrospective relief. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2461 and 42 U.S.C. § 1983.

5.    Venue is proper in this Court under 28 U.S.C. § 1391.

## The Parties

6.    Plaintiff Richard Bottom is a citizen of the United States and a current resident of Niagara County, New York.

7.    At all times hereinafter mentioned, Defendant City of Buffalo was and still is a municipal corporation organized and existing under the laws of New York. Defendant City of Buffalo established, maintained, oversaw, and was responsible for the Defendant Buffalo Police Department.

8.    At all times hereinafter mentioned, Defendant County of Niagara was and still is a municipal corporation organized and existing under the laws of New York. Defendant County of Niagara established, maintained, oversaw, and was responsible for the Defendant Niagara County Sheriff's Office.

9.    Defendants A. Patterson and M. Krug are employees of the Niagara Country Sherriff's Office.

10.    Defendant Detective Sterlace was at all relevant times hereto and employee of the Buffalo Police Department.

**Factual Allegations**

11.     On March 19, 2023, a police report was filed by Robert Phillips, owner of Buffalo Hydraulics, alleging that shots had been fired at the store's windows in Buffalo, New York.

12.     Prior to filing the report, Robert Phillips was an adverse party to Mr. Bottom in a civil suit in which Mr. Bottom had prevailed.

13.     Without any supporting evidence, Mr. Phillips falsely accused Mr. Bottom of being responsible for the alleged shooting, leading to law enforcement targeting him without probable cause.

14.     The private report included no evidence that would amount to probable cause that Mr. Bottom was the perpetrator of the subject crime.

15.     On March 20, 2023, the Buffalo Police Department issued a BOLO (Be On the Lookout) for a black four-door pickup truck in connection with the incident.

16.     The Buffalo Police Department notified the Niagara County Sherriff's of the report. Thereafter, the Niagara County Sherriff's office appeared at Mr. Bottom's home in Newfane, New York, on March 22, 2023.

17.     Based solely on this lacking report, the Buffalo Police Department contacted the Niagara County Sherriff's Office regarding Mr. Bottom and his pickup truck. Niagara County Sherriff's Office then proceeded to unlawfully search and seize Plaintiff's property.

18.     On information and belief, the Buffalo Police Department conspired with the Niagara County Sherriff's Office to unlawfully search and seize Mr. Bottom's property and person. The Niagara County Sherriff's Office received all of their information related to Mr. Bottom and the crime he was accused of by the Buffalo Police Department.

19.     On March 22, 2023, without a warrant, probable cause, or consent, multiple officers from the Niagara County Sheriff's Office including defendants A. Patterson and M. Krug entered Plaintiff's private property in Newfane, New York.

20.     When the police entered Mr. Bottom's property, Mr. Bottom **demanded to see a warrant**, but officers falsely claimed he would receive it once he was transported to a police station in Buffalo. At the time, **no warrant existed.**

21.     Thus, upon information and belief, the Niagara County Sheriff's Office intentionally lied regarding the status of a search warrant, since they had failed to obtain one, and knowingly unlawfully entered the subject property.

22.     The following day, a search warrant was issued, but **only for Plaintiff's truck**. **No warrant was ever issued for his home, garage, firearm, or person.**

23.     On, March 22, 2023, without any valid warrants, Defendants proceeded to:

- Search Plaintiff's garage and home without a search warrant.
- Seize Plaintiff's lawfully owned handgun for investigation, despite the crime involving a shotgun, and having no exigent circumstances to do so.
- Forcibly take Plaintiff to Buffalo for interrogation against his will.

24.     No circumstances existed giving rise to a need for the officers to search or seize Mr. Bottom's truck without a search warrant, nor did the officers have any probable cause to search or seize the truck.

25.     The officers informed Mr. Bottom that he must accompany them to Buffalo for questioning. Mr. Bottom asked if he was required to go and if he was required to be driven by the officers. The officers at the scene answered both questions in the affirmative. Plaintiff repeatedly stated that he did not consent to being transported, but Defendants falsely claimed he had no choice.

26.     Before being placed in a police car and taken to Buffalo, Mr. Bottom asked if he was permitted to change his shirt.

27.     The police allowed Mr. Bottom to enter his house to change his shirt, but they insisted on following him into his home while he changed. The officers did not have a warrant to enter Mr. Bottom's home and Mr. Bottom did not give the officers consent. In fact, Mr. Bottom explicitly told the officers he did not want them to enter his home.

28.     However, the officers unlawfully entered his home anyway, again violating Mr. Bottom's constitutional rights.

29.     While riding to Buffalo, the officers questioned Mr. Bottom on matters relating to the crime he was accused of, but assured Mr. Bottom that he was not under arrest. Mr. Bottom was not given his Miranda warnings at any point while he was detained in the police officer's vehicle.

30.     Upon arrival to the police station in Buffalo, officers, including Detective Sterlace, Mirandized Mr. Bottom and continued to interrogate him.

31.     After the officers interrogated Mr. Bottom, they drove him back to his home in Newfane.

32.     Mr. Bottom was never charged with any crime.

33.     Although Mr. Bottom was never charged with a crime, his truck remained impounded for two months, causing him financial losses, including lost wages and work-related damages.

34.     Plaintiff's legally owned handgun, which did not comport with the weapon in the subject crime, was unlawfully seized and withheld for over seven months, even though law enforcement knew the alleged crime was committed with a different firearm. Mr. Bottom's

gun was not returned until November 28, 2023. Coincidentally, it was only returned after Mr. Bottom filed a Complaint against the Niagara County Sherriff's Department.

35.     On December 11, 2023, shortly after his handgun was finally returned, Plaintiff was ordered to surrender all of his pistols and his pistol permit, despite never being charged with a crime.

36.     Plaintiff was forced to turn in his pistols on December 30, 2023, and was required to attend a pistol permit hearing before the Honorable John J. Ottaviano on March 8, 2024.

37.     After the hearing, on March 25, 2024, Plaintiff's pistols and permit were returned, but by that point, he had been unlawfully deprived of his firearms for 337 days.

38.     This incident resulted in the violation of Mr. Bottom's Fourth Amendment rights and Second Amendment Rights and caused Mr. Bottom a variety of harms.

39.     At all times herein, the defendants were acting under color of state law.

40.     All of the statutes, regulations, court actions, customs and practices referenced herein constitute state action within the meaning of the Constitution.

41.     At all times herein, the actions of the defendants have been intentional or in reckless disregard of the clearly established rights of the plaintiffs.

### Injury to Plaintiff

42.     By violating Mr. Bottom's constitutional rights, Defendants have directly and proximately caused Mr. Bottom significant harms, including but not limited to:

    a.  Interfering with Mr. Bottom's rights and interests in his personal and real property;

    b.  Seizing Mr. Bottom's truck and firearm;

    c.  Causing the prolonged loss of possession, use, and enjoyment of Mr. Bottom's truck and firearm;

d.   Interfering with Mr. Bottom's ability to travel at will with his truck;

e.   Expenses resulting from Mr. Bottom retrieving his truck from impound;

f.   Loss of wages and work related damages due to the seizure of his truck;

g.   Legal expenses related to related to pursuing action against defendants;

h.   Depriving Mr. Bottom of his faith in the criminal justice system;

i.   Forcing Mr. Bottom to endure and unconstitutional process; and

j.   Depriving Mr. Bottom of his constitutional right to bear arms.

### CAUSES OF ACTION

### Count I
### 42 U.S.C. § 1983 – Fourth Amendment
### (Unlawful Searches and Seizure of Mr. Bottom's Property)

43.    Mr. Bottom realleges and incorporates the allegations in all proceeding paragraphs of this Complaint as if fully stated herein.

44.    The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures.

45.    Defendants searched Plaintiff's home, garage, and property without a warrant, probable cause, or exigent circumstances.

46.    Officers A. Patterson and M. Krug, the Niagara Sherriff's Office, and the Buffalo Police Department, including Detective Sterlace, violated Mr. Bottom's Fourth Amendment rights by unlawfully searching his property.

47.    Defendants' unlawful seizure of plaintiff violated plaintiff's Constitutional right to be free from unreasonable searches and seizures guaranteed to him under the Fourth Amendment of the United States Constitution and comparable provisions of the New York State Constitution, all in violation of 42 U.S.C. 1983.

48.    As a direct and proximate result of Defendants actions, plaintiff has suffered physical, psychological and economic injuries.

49.    The Defendants claimed that Mr. Bottom's truck's appearance was the reason the officers were at Mr. Bottoms home on March 22, 2023. The truck was parked in the driveway, yet, the Defendants entered Mr. Bottom's detached garage, walked about his property, and entered his home. These actions taken by the officers show that they were unlawfully searching everywhere they could.

50.    Mr. Bottom did not consent to law enforcement searching any area of his property. Additionally, no circumstances gave rise to the officers having a need to search Mr. Bottom's property.

51.    Before forcing Mr. Bottom to be driven to Buffalo, Mr. Bottom went into his home to change his shirt. The officers followed Mr. Bottom into his home. Mr. Bottom told the officers that they did not have his consent for them to enter his home. While in Mr. Bottom's home the officers followed Mr. Bottom and looked around parts of his home.

52.    By entering, and subsequently searching, Mr. Bottom's property, garage, and home, without a warrant, Defendants violated clearly established law and violated Mr. Bottom's Fourth Amendment right to be free from unreasonable searches.

53.    Defendant cannot rely on any recognized exception to the Fourth Amendment's warrant requirement. Plaintiff was peacefully inside his home, posed no immediate threat, and was not engaged in any ongoing criminal activity. Defendants had ample time to secure a warrant yet failed to do so. Accordingly, Defendants' warrantless search and seizure were unconstitutional.

54.    Defendants seized Plaintiff's truck and handgun without lawful justification, keeping them for months.

55.    In addition to unlawfully searching Plaintiff's property and seizing his vehicle and firearm without probable cause, Defendants violated the Fourth Amendment by prolonging the deprivation of Plaintiff's property far beyond any reasonable investigatory need. Plaintiff's vehicle remained impounded for two months, and his lawfully owned firearm was withheld for 337 days, despite Plaintiff never being charged with any crime. This excessive delay constitutes an unconstitutional seizure

56.    The aforementioned actions and omissions of Defendants were in such conscious and reckless disregard for plaintiff's civil rights, that plaintiff is entitled to punitive damages.

57.    Pursuant to 42 U.S.C. 1988, plaintiff is also entitled to recover attorneys' fees, costs, and disbursements incurred in this action.

**Count II**
**42 U.S.C. § 1983 – Fourth Amendment**
**(False Arrest and Detention)**

58.    Mr. Bottom realleges and incorporates the allegations in all preceding paragraphs of this Complaint as if fully stated herein.

59.    On March 22, 2023, while Mr. Bottom was lawfully at his home, he was detained against his will and falsely arrested by the Defendants.

60.    Defendants forcibly transported Plaintiff to Buffalo against his will without probable cause or legal authority, violating his Fourth Amendment rights.

61.    After the unlawful search and seizure of Mr. Bottom's property, officers placed Mr. Bottom in a car and drove him to Buffalo to be interrogated. Mr. Bottom was Mirandized at

the Buffalo Police Station and interrogated by Defendant Detective Sterlace. The officers actively sought to confine Mr. Bottom by taking him to Buffalo.

62.      Defendant Detective Sterlace actively kept Mr. Bottom under confinement while he was at the police station and continuously interrogated him against his will.

63.      Mr. Bottom was aware that the officers were forcing him to go against his will, even though Mr. Bottom repeatedly told the officers he did not consent to going. Additionally, there were not special circumstances that allowed the officers to seize Mr. Bottom's person in this way. This unlawful seizure of Mr. Bottom's person constitutes an unlawful Fourth Amendment seizure.

64.      At no point did Plaintiff consent to being transported to Buffalo. Plaintiff explicitly asked whether he was required to go and was falsely told he had no choice. Because Defendants provided false information to coerce Plaintiff's compliance, his detention was unlawful.

65.      The aforementioned actions constitute false arrest and false imprisonment and were carried out without cause and/or justification by the Defendants.

66.      Plaintiffs' detention was without probable cause, without a valid arrest warrant, and in bad faith.

67.      Defendants' actions in forcibly transporting Plaintiff from his home to Buffalo without probable cause or a warrant constitute an unlawful seizure under the Fourth Amendment. The Supreme Court has long recognized that an individual's liberty cannot be restricted without probable cause or a valid arrest warrant. Here, Plaintiff was removed from his property against his will and was transported miles away, which constitutes a de facto arrest without any legal justification.

68.     At the time of the unlawful imprisonment, Plaintiff had not committed any illegal act.

69.     Defendants relied solely on an uncorroborated and false report to justify the seizure of Plaintiff. Defendants conducted no independent investigation, failed to seek a warrant, and did not have sufficient facts to establish probable cause. Accordingly, Plaintiff's detention was unconstitutional.

70.     The aforesaid was malicious, unlawful, and not based upon a valid warrant, probable cause, and/or any other justification, and was therefore a false arrest.

71.     Not only was Plaintiff forcibly removed from his home, but Defendants also subjected him to hours of unlawful detention and psychological coercion. He was placed in a police vehicle against his will, denied the ability to leave, and interrogated before being transported back home. This excessive and unnecessary detention compounded the constitutional violation and caused Plaintiff significant distress.

72.     Plaintiff's detention was unlawful, constituting false imprisonment under federal law.

73.     The aforementioned actions and omissions of Defendants were in such conscious and reckless disregard for plaintiff's civil rights, that plaintiff is entitled to punitive damages.

74.     Pursuant to 42 U.S.C. 1988, plaintiff is also entitled to recover attorneys' fees, costs, and disbursements incurred in this action.

## Count III
## Violation of the Second Amendment

75.    The Second Amendment provides an "unqualified command": "the right of the people to keep and bear Arms, shall not be infringed." See (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n. 10 (1981); U.S. Const., Amend. 2.

76.    The Second Amendment (incorporated through the Fourteenth Amendment) "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). This right is particularly acute at home, "where the need for defense of self, family, and property is most acute." *Heller,* 554 U.S. at 628.

77.    The Supreme Court has held that the right to bear arms is a "fundamental right." *McDonald v. Chicago*, 561 U.S. 742, 778 (2010).

78.    The Supreme Court has consistently affirmed that the Second Amendment protects the right of individuals to possess and bear arms for self-defense, particularly in one's home. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Moreover, under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), firearm restrictions cannot impose arbitrary or undue burdens on lawful gun owners. The actions of Defendants in seizing Plaintiff's legally owned firearm and permit without any criminal charges or due process constitute an impermissible infringement of Plaintiff's Second Amendment rights.

79.    Mr. Bottom was issued a pistol permit on December 8, 2021.

80.    When the Defendants unlawfully searched and seized Mr. Bottom's home, they seized Mr. Bottoms pistol.

81.    The Defendants seized Mr. Bottom's pistol thereby depriving him of his constitutionally protected right to bear arms, without the due process of law.

82.    Thereafter, After the plaintiff was falsely arrested by the Defendants, without any prior notice and without any form of due process, and in violation of the plaintiff's right to bear arms, The Defendants kept Mr. Bottom's pistol from March 22, 2023, to November 28, 2023.

83.    The Plaintiff was never charged for any crime.

84.    The subject pistol was did not pertain to the subject report filed by Robert Phillips. Thus, there was no reason for the pistol to be held for investigation and certainly no justification for it being held for over seven months.

85.    The Plaintiff is at risk for further deprivation of his firearms in the future.

86.    The apparently unrestrained authority of the Defendants to seize Plaintiff's pistols at any time violates the Plaintiff's rights to bear arms.

87.    Once Mr. Bottom was given his pistol again, without any notice and without any form of due process, and again in violation of the plaintiff's right to bear arms, the state of New York temporarily suspended his permit based on whatever unspecified information he had received from those who falsely arrested the plaintiff.

88.    Mr. Bottom was required to turn in his pistols and his pistol permit, again depriving him of his constitutionally protected right to bear arms, without the due process of law.

89.    Defendants deprived Plaintiff of his fundamental Second Amendment rights without due process of law, in violation of the Fourteenth Amendment. Despite never being charged with a crime, Plaintiff was ordered to surrender his legally owned pistol and his pistol permit, was denied access to his firearms for over 337 days, and was forced to attend a hearing without meaningful procedural protections. The government may not deprive a citizen of a

fundamental constitutional right without due process, and Defendants' actions constitute an unconstitutional infringement.

90.    At no point did Defendants possess probable cause to believe that Plaintiff's lawfully owned handgun was connected to any alleged criminal conduct. The firearm seized from Plaintiff's home was not the weapon allegedly used in the crime reported by Robert Phillips, nor was there any reasonable basis for believing Plaintiff's firearm had been used unlawfully. Despite this, Defendants confiscated the weapon and refused to return it for an excessive and unjustified period of time, violating Plaintiff's constitutional rights.

91.    The aforementioned actions and omissions of Defendants were in such conscious and reckless disregard for plaintiff's civil rights, that plaintiff is entitled to punitive damages.

## Count IV
### Failure to Train, Supervise and Discipline – 42 U.S.C. § 1983
### Plaintiff v. City of Buffalo and Buffalo Police Department

92.    At all times relevant herein, Defendant Officers were acting under color of all the laws and regulations of the State of New York and the City of Buffalo has a policy, custom, practice and pattern of conduct in place that enables it agents and employees police officers to act with deliberate indifference to the constitutional rights of individuals. This policy, custom, practice and pattern of conduct, includes, but is not limited to, tolerating misconduct by its police officers, encouraging misconduct by failing to adequately supervise, discipline and train its police officers.

93.    Specifically, the customs, practices, and policies of the Defendant were not adequate to train its policies officers, including but not limited to Defendant Officers. The City of Buffalo's inadequate training includes but is not limited to:

    a.    Failing to teach officers how to properly investigate private criminal complaints;

14

b.  Failing to teach officers the requirements surrounding search warrants and arrest warrants;

c.  Failing to properly screen, supervise, discipline, transfer, counsel or otherwise control police officers, including the officers mentioned herein who are known or should have been known to engage in illegal and improper procedures;

d.  Creating and implementing procedures that allow for and promote violating civilians' rights through unconstitutional searches and seizures under unjustified circumstances;

e.  Detaining individuals without conducting any investigation or due diligence;

f.  Failing to question witnesses or other individuals at the alleged crime scene to determine if an individual actually committed a crime;

g.  Teaching officers to seize individuals' personal property without any legal justification;

h.  Otherwise violating the constitutional rights of the Plaintiff.

94.  Upon information and belief, numerous additional legal actions have further documented Defendant City of Buffalo's failure to train over the years, illustrating a chronic and endemic failure on the part of Defendant City of Buffalo.

95.  Upon information and belief, prior to the incident as stated herein, defendants City of Buffalo and City of Buffalo Police Department had received complaints and service of prior lawsuits that Defendant officers engaged in a pattern and practice of using unconstitutionally searches and seizures of the general public in the course of their duties as a police officer.

96.  Upon information and belief, Defendant City of Buffalo and Buffalo Police Department have been subject to multiple complaints, lawsuits, and investigations related to a

pattern and practice of conducting warrantless searches, making unconstitutional arrests, and unlawfully seizing property, including firearms. Despite these documented violations, the City of Bufalo has failed to correct such practices, leading to continued constitutional abuses, including those suffered by Plaintiff.

97.    Defendant City of Buffalo has exhibited a pattern of behavior characterized by its failure to adequately train its police officers, resulting in instances where innocent citizens are deprived of their constitutional rights without proper evaluation of the scene or consideration of relevant data.

98.    Despite repeated instances of unconstitutional conduct by its officers, Defendant City of Buffalo has failed to adequately train its officers regarding constitutional protections against unlawful searches, false arrests, and firearm seizures. Further, the City of Buffalo has exhibited a long-standing practice of failing to discipline officers who engage in constitutional violations, thereby tacitly encouraging continued misconduct.

99.    The City of Bufalo had actual and constructive knowledge that its officers engaged in unconstitutional practices, including unlawful searches and seizures. Despite this, the City of Buffalo acted with deliberate indifference by failing to implement policies to curb these abuses, thereby creating an environment where officers were emboldened to violate constitutional rights without fear of consequences.

100.    Policymakers in the City of Buffalo, including the Mayor, the Chief of Police, and members of the City Council, bear responsibility for the within failures. Despite having the authority to implement necessary reforms, policymakers in the City of Buffalo failed to act to prevent the widespread unconstitutional conduct of Buffalo Police Department officers. This

failure to supervise and discipline their officers contributed directly to the constitutional violations suffered by Plaintiff

101.    By failing to provide adequate training to police officers, the Defendants acted with an intentional, reckless, and callous disregard to the constitutional rights of the Plaintiff.

**Count V**
**Failure to Train, Supervise and Discipline – 42 U.S.C. § 1983**
**Plaintiff v. the County of Niagara and Niagara County Sherriff's Department**

102.    At all times relevant herein, Defendant Officers were acting under color of all the laws and regulations of the State of New York and the County of Niagara has a policy, custom, practice and pattern of conduct in place that enables it agents and employees police officers to act with deliberate indifference to the constitutional rights of individuals. This policy, custom, practice and pattern of conduct, includes, but is not limited to, tolerating misconduct by its police officers, encouraging misconduct by failing to adequately supervise, discipline and train its police officers.

103.    Specifically, the customs, practices, and policies of the Defendant were not adequate to train its policies officers, including but not limited to Defendant Officers. The County of Niagara's inadequate training includes but is not limited to:

   a.  Failing to teach officers how to properly investigate private criminal complaints;

   b.  Failing to teach officers the requirements surrounding search warrants and arrest warrants;

   c.  Failing to properly screen, supervise, discipline, transfer, counsel or otherwise control police officers, including the officers mentioned herein who are known or should have been known to engage in illegal and improper procedures;

    d.   Creating and implementing procedures that allow for and promote violating civilians rights through unconstitutional searches and seizures under unjustified circumstances;

    e.   Detaining individuals without conducting any investigation or due diligence;

    f.   Failing to question witnesses or other individuals at the alleged crime scene to determine if an individual actually committed a crime;

    g.   Teaching officers to seize individuals' personal property without any legal justification;

    h.   Otherwise violating the constitutional rights of the Plaintiff.

104.    Upon information and belief, numerous additional legal actions have further documented Defendant County of Niagara's failure to train over the years, illustrating a chronic and endemic failure on the part of Defendant County of Niagara.

105.    Upon information and belief, prior to the incident as stated herein, Defendants County of Niagara and Niagara County Sherriff's Department had received complaints and service of prior lawsuits that Defendant officers engaged in a pattern and practice of using unconstitutionally searches and seizures of the general public in the course of their duties as a police officers.

106.    The County of Niagara, through its policymakers, had constructive or actual knowledge that its officers were engaging in unconstitutional conduct and acted with deliberate indifference by failing to implement corrective policies or discipline offending officers.

107.     Despite repeated instances of unconstitutional conduct by its officers, the County of Niagara failed to investigate, discipline, or otherwise correct the behavior of its law enforcement personnel. The failure effectively sanctioned and encouraged continued violations of constitutional rights.

108.     Policymakers in the County of Niagara, including the County Manager, the County Sheriff, and members of the County Legislature, bear responsibility for the within failures.

109.     Had the County of Niagara implemented proper training, oversight, and disciplinary measures, the officers involved in the violation of Plaintiff's rights would have understood the constitutional limits of their authority. The failure to do so directly resulted in the unlawful search, seizure, and false arrest and imprisonment of the Plaintiff.

110.     By failing to provide adequate training to police officers, the Defendants acted with an intentional, reckless, and callous disregard to the constitutional rights of the Plaintiff.

**Count VI**
**False Imprisonment**

111.     On or about March 22, 2023, Plaintiff Mr. Bottom was wrongfully arrested.

112.     The Defendants did not have probable cause for Mr. Bottom's detention.

113.     The Defendants improperly detained the Plaintiff for an unnecessary period of time.

114.     Defendants intended to confine Mr. Bottom. Mr. Bottom was conscious of the confinement and at no point consented to the confinement. In fact, Mr. Bottom stated multiple times that he did not wish to go with the Defendants in their vehicle nor to the station.

115.     This confinement, in the Defendants' vehicle and at the station, having arisen from the Defendants' conduct, was not otherwise privileged.

116.    The Defendants had no legal justification for the detainment of Mr. Bottom. The
Defendants lacked any search warrants, arrest warrants, or probable cause to legally justify
Mr. Bottom's detainment and false imprisonment. This confinement and false
imprisonment was illegal.

117.    There was no evidence in the private complaint that Mr. Bottom was involved in
the subject crime.

118.    Plaintiff is entitled to punitive damages, in an amount to be determined at trial, plus
interests and costs, for Defendants' willful and malicious false imprisonment of the
Plaintiff.

**Count VII**
**Trespass**

119.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

120.    At all relevant times, Plaintiff owned and possessed the Plaintiff's premises

121.    On March 22, 2023, Defendants wrongfully, and without legal right, trespassed
upon Mr. Bottoms premises.

122.    Defendants entered on to Mr. Bottom's premises without invitation or permission.

123.    The Defendants, without any proper search warrants or arrest warrants, entered onto
Mr. Bottom's yard on his property.

124.    Furthermore, without any proper search warrants or arrest warrants, entered onto
Mr. Bottom's home. Mr. Bottom explicitly told Defendants that he did not consent to their
entry in his home.

125.    However, Defendants willfully and maliciously trespassed onto Plaintiff's premises
including his yard, his garage, and his home.

126.     At all times relevant to this action, Defendants acted in wanton and willful disregard of Plaintiffs property rights, depriving Plaintiff of its exclusive use and quiet enjoyment of Plaintiff's Premises.

127.     Mr. Bottom was in immanent fear of bodily injury due to Defendants sudden and illegal entry onto his property without proper warrants.

128.     Defendants knew, or should have known, that their intrusion onto Mr. Bottom's property and into his home would startle and frighten him and place him then and thereafter in imminent fear of bodily injury of which was intentionally accomplished by Defendants.

129.     Plaintiff also is entitled to punitive damages, in an amount to be determined at trial, plus interests and costs, for Defendants' willful and malicious trespasses upon Plaintiffs Premises.

## COUNT VIII
## Battery

130.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

131.      At all times relevant hereto, Defendants acted intentionally and without justification to cause harmful and offensive contact to Plaintiff's person.

132.     On March 22, 2023, Defendants, acting under color of law, intentionally made unlawful contact with Plaintiff when they forcibly took him from his property, placed him in a police vehicle and transported him against his will to Buffalo, New York.

133.     Defendants' actions, including but not limited to physically seizing Plaintiff, placing him in a police vehicle and detaining him against his will, as well as grabbing and seizing the Plaintiff and objects from his person, constituted an unlawful battery upon Plaintiff.

134.    The Defendants acted without probably cause, legal justification, or exigent circumstances to seize and physically restrain the Plaintiff, making their action an intentional and unlawful battery.

135.    As a direct and proximate result of Defendant's battery, Plaintiff suffered physical discomfort, emotional distress, and psychological harm.

136.    Defendants actions were willful, wanton, malicious, and done in reckless disregard of Plaintiff's constitutional rights.

137.    Plaintiff is entitled to compensatory damages for harm suffered as a result of the battery committed by Defendants.

138.    Plaintiff is further entitled to punitive damages, as Defendants acted with deliberate indifference to Plaintiff's rights and engaged in egregious misconduct.

## COUNT IX
## Intentional Infliction of Emotional Distress

139.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

140.    At all relevant times hereto, Defendants engaged in extreme and outrageous conduct that was intended to, or recklessly disregarded the likelihood of, causing Plaintiff severe emotional distress.

141.    On March 22, 2023, Defendants forcibly removed from his home, unlawfully detained him, and transported him against his will without any justification.

142.    Defendant engaged in a pattern of misconduct, including trespassing on Plaintiff's property, falsely arresting him, and seizing his personal property, all without a valid warrant or probable cause.

143.     Defendants' actions went beyond all bounds of decency and constituted extreme and outrageous behavior.

144.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to anxiety, humiliation, embarrassment, and a loss of trust in law enforcement.

145.     Defendants acted with malice and in reckless disregard of Plaintiff's constitutional and legal rights, knowing or having reason to know that their conduct would cause severe emotional distress.

146.     Plaintiff is entitled to compensatory damages for the severe emotional distress caused by Defendants' intentional and reckless misconduct.

147.     Plaintiff is further entitled to punitive damages in an amount to be determined at trial, as Defendants' actions were willful, wanton, and malicious.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment: (1) declaring Defendants searches and seizures unconstitutional; (2) awarding damages to compensate Plaintiff for his injuries; (3) awarding attorneys' fees, costs, and expenses under 42 U.S.C. § 1983; and (4) providing any other legal or equitable relief that the Court deems just and proper.

## **Jury Demand**

Plaintiff demands a trial by jury on all issues triable under Rule 38 of the Federal Rules of Civil Procedure.

Respectfully Submitted:

*/s/ Steven Brill*

Steven Brill, Esq.
NY ID No. 2673499
Sullivan & Brill, LLP
50 Fountain Plaza
Suite 1400
Buffalo, NY 14202
(716)-559-7105
Steven.brill@sullivanbrill.com